Charles **BELLA**, Plaintiff–Appellee,

v.

Lee **CHAMBERLAIN** and Curtis Meyers, Defendants–Appellants.

No. 93–2092.

United States Court of Appeals, Tenth Circuit.

May 20, 1994.

Edward Himmelfarb (Don Svet, U.S. Atty. and Larry Gomez, U.S. Atty., Albuquerque, NM, Stuart E. Schiffer, Acting Asst. Atty. Gen. and Frank W. Hunger, Asst. Atty. Gen. and Barbara L. Herwig, Civ. Div., Dept. of Justice, Washington, DC, were with him on the briefs), Civ. Div., Dept. of Justice, Washington, DC, for defendants-appellants.

Elizabeth E. Simpson (Thomas R. Logan, Cedar Crest, NM, was with her on the brief), Tomita & Simpson, P.C., Albuquerque, NM, for plaintiff-appellee.

Before WHITE, Associate Justice (Ret.),* TACHA and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Charles Bella brought this action against defendants Lee Chamberlain and Curtis Meyers, two officers of the United States Customs Service, alleging that they used excessive force against him in violation of the Fourth and Fifth Amendments. Defendants both moved to dismiss Mr. Bella's complaint for failure to state a constitutional claim, also arguing that they were entitled to qualified immunity. The district court issued an order denying the motions. Defendants

---

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. Background

### A. Facts

The allegations in Mr. Bella's complaint, which we must accept as true, read like a Hollywood script. Mr. Bella is the owner and chief pilot of Bear Helicopters. On July 11, 1988, Mr. Bella piloted his Aerospacial Gazelle helicopter ("Gazelle" or "helicopter") from El Paso to the Santa Fe Airport where he met Beverly Shoemaker to fly her over some real estate located near Santa Fe. Ms. Shoemaker had told Mr. Bella that she was the secretary to people who were interested in the real estate. After she and Mr. Bella boarded the helicopter and left the Santa Fe Airport, Ms. Shoemaker pulled a gun on Mr. Bella and ordered him to fly to the New Mexico State Penitentiary to assist in the escape of some inmates.

Following Ms. Shoemaker's orders, Mr. Bella landed the helicopter in the prison yard, where three inmates climbed on board. Mr. Bella then took off as ordered. Shortly after takeoff, one of the inmates handcuffed Mr. Bella to the helicopter. At the direction of the inmates, Mr. Bella piloted the helicopter to Los Lunas, New Mexico, and landed at the Mid–Valley Air Park. There, Ms. Shoemaker and the inmates disembarked, leaving Mr. Bella handcuffed to the helicopter.

Defendant Lee Chamberlain, an officer of the United States Customs Service, was piloting a Customs Service Blackhawk helicopter ("Blackhawk") when he observed the Gazelle helicopter on the ground at Mid–Valley Air Park. Officer Chamberlain landed the Blackhawk approximately seventy feet in front of the Gazelle. Defendant Curtis Meyers, a Customs Service officer, and Customs Service Agent Ken Hebert (who is not a defendant in this case) were passengers on the Blackhawk. Agent Hebert exited the Blackhawk and approached the Gazelle. At the same time, one of the inmates returned to the Gazelle, held a gun to Mr. Bella's head, and ordered him to take off. Agent Hebert was less than ten yards from the front of the Gazelle and was pointing an AR–15 semiauto-matic rifle at the cockpit. Mr. Bella alleges that Officer Chamberlain saw that the inmate had a gun to Mr. Bella's head and was trying to hide behind Mr. Bella and to use him as a shield. According to Mr. Bella, Officer Chamberlain knew at that point that Mr. Bella was an innocent hostage.

In an effort to prevent the Gazelle's take-off, Officer Chamberlain hovered the Black-hawk within twenty to fifty feet directly in front of and above the Gazelle. Mr. Bella managed to get the Gazelle off the ground, narrowly avoiding a collision with the Black-hawk. As the Gazelle left Mid–Valley Air Park, Officer Meyers, still aboard the Black-hawk, fired three rounds from a semiauto-matic weapon at the Gazelle, one of which struck the fleeing helicopter. Officer Chamberlain then landed the Blackhawk, picked up Agent Hebert, and began to pursue the Gazelle, which was flying north in the direction of Albuquerque with Mr. Bella and the inmate on board.

The Blackhawk chased the Gazelle for forty to fifty minutes. Following the inmate's orders, Mr. Bella landed the Gazelle briefly at Coronado Airport in northern Albuquerque and took off again heading south for Albuquerque International Airport. A New Mexico State Police helicopter joined the chase at this time, flying to the right of the Gazelle as the Blackhawk flew to the left. Mr. Bella alleges that the Blackhawk and the State Police helicopters "boxed in" the Gazelle, flying "dangerously close" to the Gazelle and forcing Mr. Bella to maneuver so as to avoid a collision. Mr. Bella finally landed the Gazelle at the Albuquerque International Airport where he and the inmate were taken into custody.

### B. Procedural History

Mr. Bella brought this action in July 1991 in the United States District Court for the District of New Mexico alleging that Officers Chamberlain and Meyers used excessive force against him. In his complaint, Mr. Bella alleges that Officer Meyers violated his rights under both the Fourth and Fifth Amendments by firing at, and hitting, the Gazelle helicopter when Officer Meyers knew or should have known that Mr. Bella was an

innocent hostage. Mr. Bella alleges that Officer Chamberlain violated his Fifth Amendment rights by flying the Blackhawk helicopter dangerously close to the Gazelle, thus threatening Mr. Bella's life and safety, when Officer Chamberlain knew or should have known that Mr. Bella was an innocent hostage. Mr. Bella seeks damages[1] for injury to his Gazelle helicopter and for mental anguish and distress.

Officers Meyers and Chamberlain separately moved to dismiss Mr. Bella's complaint under Rule 12(b)(6).[2] Raising the defense of qualified immunity, the officers argued as a threshold matter that the complaint failed to state a constitutional claim. They also argued that, even if the complaint did state a constitutional claim, they were still entitled to qualified immunity because their actions were objectively reasonable. The district court held that the complaint stated a claim under the Fourth and Fifth Amendments and that the qualified immunity defense did not otherwise shield the defendants from liability. Making the same arguments they made below, Officers Meyers and Chamberlain now bring this appeal pursuant to *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (holding that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment").

## II. Discussion

### A. Qualified Immunity

 We review de novo the denial of qualified immunity. *Powell v. Gallentine,* 992 F.2d 1088, 1090 (10th Cir.1993). Qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Har-*

*low v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the Supreme Court made it clear that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of *whether the plaintiff has asserted a violation of a constitutional right at all.*" *Id.* at 231, 111 S.Ct. at 1793 (emphasis added); *see also Maldonado v. Josey,* 975 F.2d 727, 729 (10th Cir.1992) (citing *Siegert* and noting that the threshold inquiry in analyzing a qualified immunity claim is whether the complaint states a constitutional claim), *cert. denied,* — U.S. ——, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *Losavio,* 847 F.2d at 646 (noting that once a defendant pleads qualified immunity, the burden shifts to the plaintiff "to show *both* that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred") (emphasis added). This threshold inquiry is purely a question of law, *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793, and though this inquiry takes place in the context of a qualified immunity defense, the same rules governing dismissal of complaints apply. We "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991). A complaint may be dismissed for failure to state a claim "only when it appears that the plaintiff can prove no set of facts in support of the claim[ ] that would entitle the plaintiff to relief." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1115 (10th Cir.1991).

Officers Meyers and Chamberlain argue that the district court erred in denying their motions to dismiss primarily because Mr. Bella's complaint fails to meet the "necessary concomitant" requirement of stating a claim

---

**1.** *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** The motions also sought to dismiss Mr. Bella's complaint pursuant to Rule 12(b)(2) on the

ground that the district court lacked personal jurisdiction over the defendants because Mr. Bella failed to effect proper service. This issue is not before us.

for a "violation of a constitutional right." *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793. Because we agree with defendants that plaintiff fails to state a valid constitutional claim, we do not address defendants' alternative argument that plaintiff failed to allege a violation of a "clearly established ... right[ ] of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

## B. Fourth Amendment

The Fourth Amendment protects individuals against "unreasonable searches and seizures." To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred and that the seizure was "unreasonable." *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S.Ct. 1378, 1382–83, 103 L.Ed.2d 628 (1989). Mr. Bella's complaint alleges that Officer Meyers used excessive force in violation of the Fourth Amendment by discharging a firearm that struck Mr. Bella's Gazelle helicopter.[3] Officer Meyers, on the other hand, contends that Mr. Bella has failed to state a Fourth Amendment claim because firing shots at and hitting the Gazelle helicopter did not result in a "seizure" since the shots were unsuccessful in stopping Mr. Bella. Officer Meyers asserts that no "seizure" occurred until Mr. Bella actually was taken into custody at the Albuquerque International Airport. In analyzing Mr. Bella's Fourth Amendment claim, we begin by identifying when the "seizure" occurred.

In *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that a "seizure" occurs only when a fleeing person is physically touched by police or when he or she submits to a show of authority by police.[4] *Id.* at 626–27, 111 S.Ct. at 1550–51. In adopting this position, the Court expressly stated that an assertion of authority by the police without submission by the fleeing person does not constitute a seizure. *Id.* at 626, 111 S.Ct. at 1550; *see also id.* 499 U.S. at 626 n. 2, 111 S.Ct. at 1551 n. 2 (noting that "neither usage nor common-law tradition makes an *attempted* seizure a seizure"); *id.* at 628, 111 S.Ct. at 1552 (stating that a seizure does not occur during· the course of a police pursuit of a fleeing vehicle if the pursuit, as a show of authority, does not produce a stop) (citing *Brower,* 489 U.S. at 597, 109 S.Ct. at 1381). This language in *Hodari* suggests that when law enforcement officers shoot at a fleeing suspect, a "seizure" occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to this show of authority. A recent Eighth Circuit decision applying *Hodari* confirms this interpretation.

In *Cole v. Bone,* 993 F.2d 1328 (8th Cir. 1993), the Eighth Circuit applied *Hodari* to determine when a "seizure" occurs for purposes of a Fourth Amendment excessive force claim. David Cole, driving an 18–wheel tractor-trailer truck eastbound on I–70, sped through a toll booth in Bonner Springs, Kansas, without stopping to pay the toll. *Id.* at 1330. Kansas and Missouri police employed

---

**3.** Mr. Bella admits that his complaint alleges a Fourth Amendment claim only against Officer Meyers, yet he attempts to assert on appeal a Fourth Amendment claim against Officer Chamberlain, pointing out that he has a request pending in the district court to so amend his complaint. We "generally will not address issues that were not considered and ruled upon by the district court." *Burnette v. Dresser Indus., Inc.* 849 F.2d 1277, 1282 (10th Cir.1988). "Exceptions to this rule are rare and are generally limited to cases where ... the appellate court feels it must resolve a question of law to prevent a miscarriage of justice." *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991). Here, the district court did not rule on a Fourth Amendment claim against Officer Chamberlain. Mr. Bella offers no reason why we should grant an exception to the general rule, and after re-

viewing the record, we see no reason to grant such an exception in this case.

**4.** Plaintiff makes the novel argument that *Hodari* is inapplicable in this case because *Hodari* dealt with an evidentiary issue whereas this case deals with an excessive force claim. This argument is entirely without merit. The discussion in *Hodari* focused specifically on what governmental action constitutes a "seizure," a question common to Fourth Amendment decisions involving suppression of evidence and those involving claims of excessive force. Lest any doubt remain regarding *Hodari*'s applicability to this case, we point out that other courts routinely have applied *Hodari* in the context of Fourth Amendment excessive force claims. *See Cole v. Bone,* 993 F.2d 1328, 1332–33 (8th Cir.1993); *Carter v. Buscher,* 973 F.2d 1328, 1332–33 (7th Cir.1992).

numerous tactics in an effort to stop the fleeing truck—they engaged in a high speed pursuit of the truck, they set up rolling and stationary roadblocks and they fired shots that struck the truck's tires, radiator and window. *Id.* at 1330–31. All these efforts were unsuccessful. The truck finally came to a stop after a police officer, attempting to disable the truck's engine, fired a shot that struck David Cole in the forehead. *Id.* at 1331. The court held that the driver was seized only when he was struck by the bullet, concluding that the officers' pursuit of the truck, the shots fired by the officers that struck the truck and the rolling and stationary roadblocks did not constitute a seizure because these assertions of authority failed to produce a stop. *Id.* at 1332–33; *see also Brower,* 489 U.S. at 597, 109 S.Ct. at 1381 (holding that a Fourth Amendment seizure of a fleeing suspect occurs "only when there is a governmental *termination* of freedom of movement *through means intentionally applied* ") (first emphasis added); *United States v. Holloway,* 962 F.2d 451, 456–57 (5th Cir.1992) (fleeing suspect not seized when police car blocked his car's path but only when he reversed gears and backed into another police car, thereby disabling his own car); *Clark v. Nassau County,* No. 89–1000–CIV–J–14, 1991 WL 350041 (M.D.Fla. Sept. 11, 1991) (holding that a fleeing suspect in a car was seized only when an officer actually shot him, not when several officers previously shot his vehicle's tires in an effort to stop him), *aff'd,* 968 F.2d 23 (11th Cir.1992).

■ Applying the rationale of *Hodari* and *Cole,* we conclude that the shots fired by

Officer Meyers that struck Mr. Bella's helicopter did not result in a "seizure." The shots constituted an assertion of authority, but they did not cause Mr. Bella to submit [5] nor did they otherwise succeed in stopping him.[6] Indeed, Mr. Bella does not contend seriously that he was "seized" prior to the time he was actually arrested at the Albuquerque International Airport. He nevertheless asserts that we must examine Officer Meyers' alleged actions of excessive force leading up to the seizure at the Albuquerque International Airport (i.e., shooting at and hitting the Gazelle helicopter) in determining whether the seizure was reasonable. We disagree.

We do not look to events that occurred approximately one hour *prior to* Mr. Bella's actual seizure to determine if the seizure was reasonable. "A seizure is a single act, and not a continuous fact." *Hodari,* 499 U.S. at 625, 111 S.Ct. at 1550 (quoting *Thompson v. Whitman,* 18 Wall. 457, 471, 21 L.Ed. 897 (1874)). It must be remembered that "[t]he Fourth Amendment prohibits unreasonable *seizures,* not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment." [7] *Cole,* 993 F.2d at 1333 (citation omitted); *see also Carter,* 973 F.2d at 1332 ("[P]re-seizure conduct is not subject to Fourth Amendment scrutiny."). Because Mr. Bella does not challenge his "actual" seizure at the Albuquerque International Airport, we conclude that his complaint fails to state a claim against Officer Meyers for a violation of the Fourth Amendment.

---

5. We recognize that, because Mr. Bella was being held hostage at gunpoint, he was prevented from submitting to this show of authority. This fact, however, does not change our Fourth Amendment "seizure" analysis.

6. We note, however, that it may not be a foregone conclusion that a Fourth Amendment "seizure" would have occurred even had the officer's shot accidentally hit Mr. Bella. *See Landol–Rivera v. Cruz Cosme,* 906 F.2d 791, 795–96 (1st Cir.1990).

7. Obviously, events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (stating that

*"all* claims that law enforcement officers have used excessive force—deadly or not—*in the course of* an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard") (second emphasis added); *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) (stating that "reasonableness depends on not only when a seizure is made, but also *how it is carried out* ") (emphasis added). In this case, however, the shooting was not immediately connected with the actual seizure. Not only did the shooting occur one hour prior to the seizure, a lengthy helicopter chase intervened between the time of the shooting and the seizure.

## C. Fifth Amendment

In *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395, 109 S.Ct. at 1871. In the instant case, however, the alleged excessive force occurred prior to, not in the course of, the actual "seizure" of Mr. Bella at the Albuquerque International Airport. Without deciding the issue, we assume that excessive force claims arising outside the context of a seizure still may be analyzed under substantive due process principles. *Accord Landol–Rivera v. Cruz Cosme*, 906 F.2d 791, 796 (1st Cir.1990); *Pleasant v. Zamieski*, 895 F.2d 272, 276 n. 2 (6th Cir.), *cert. denied*, 498 U.S. 851, 111 S.Ct. 144, 112 L.Ed.2d 110 (1990); *see also Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir.1993); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1408 n. 10 (9th Cir. 1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990).

The Fifth Amendment Due Process Clause protects citizens from governmental deprivation of life, liberty and property without due process of law. Mr. Bella's complaint alleges a due process violation based on the fact that Officer Meyers "discharged a firearm at, and hit, [the Gazelle] helicopter" and that Officer Chamberlain threatened Mr. Bella's "life and safety" by flying the Blackhawk helicopter "dangerously close" to the Gazelle when both officers knew or should have known that Mr. Bella was an innocent hostage.[8] The district court, noting that defendants employed "potentially deadly force," concluded that Mr. Bella's complaint stated a claim for excessive force under the Fifth Amendment. We disagree.

"Under the due process standard, the factors relevant to whether the use of force is excessive are: (1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the ... officer." *Hannula v. City of Lakewood*, 907 F.2d 129, 131–32 (10th Cir.1990). Force inspired by malice or by "unwise, excessive zeal amounting to an abuse of official power that shocks the conscience ... may be redressed under [the Fifth Amendment]." *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). Here, the facts alleged in Mr. Bella's complaint fail to meet this high threshold.

First, the extent of Mr. Bella's injury is minimal. In fact, though he alleges "mental anguish and distress," he suffered no physical injuries, and we have never upheld an excessive force claim without some evidence of physical injury. *Compare Martin v. Board of County Comm'rs*, 909 F.2d 402, 407 (10th Cir.1990) (upholding excessive force claim where police officers' unreasonable conduct in transporting woman from hospital to prison aggravated an existing fracture in her neck) *with Hannula*, 907 F.2d at 132 (refusing to uphold excessive force claim where tight handcuffs caused plaintiff to experience pain, but produced no contusions, lacerations or damage to the bones or nerves of her wrists). Though some courts have suggested that an excessive force claim may be stated

---

8. Somewhat disingenuously, Mr. Bella argues on appeal that his complaint alleges that Officer Meyers fired shots at him personally and not just at the Gazelle helicopter. Though we must accept the allegations of the complaint as true, construing them in the light most favorable to the plaintiff, this requirement applies only to those allegations that are "well-pleaded." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Mr. Bella's allegation that Officer Meyers fired shots at him personally is not "well-pleaded." A single phrase in the complaint makes a passing reference to such an allegation, but no less than three paragraphs in the complaint specifically allege that Officer Meyers fired shots at, and hit, the Gazelle *helicopter*. It seems both ludicrous and inconsistent for Mr. Bella to now assert on appeal that Officer Meyers, who allegedly "knew or should have known" that Mr. Bella was an innocent hostage, intentionally shot at Mr. Bella personally. We assume that if Mr. Bella believed that he could show Officer Meyers fired directly at him, the complaint undoubtedly would have made more than a passing reference to such an allegation and instead would have made the allegation in a specific and conspicuous manner.

without proof of any physical injury in rare circumstances where one of the other due process factors involves particularly egregious governmental conduct, *see Gumz v. Morrissette*, 772 F.2d 1395, 1401–02 (7th Cir. 1985) ("Circumstances involving actions of state officials maliciously designed to take advantage of a known mental weakness or instability and to evoke an extreme emotional response from an individual could violate Fourteenth Amendment due process guarantees (even if the emotional distress suffered by the individual did not result in any observable physical symptoms)."), *overruled on other grounds, Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987); *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981) (upholding jury verdict against police officer who, without justification, brandished his revolver eighteen inches from a motorist's head, with the motorist's wife in the precise line of fire, and then threatened to shoot), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982), we have never adopted this approach and we need not decide the propriety of such an approach in the instant case. The facts here simply do not demonstrate egregious governmental conduct.

Second, Mr. Bella's complaint makes no allegations of improper motives or malice. Nor can malice be inferred from the officers' actions of firing at and boxing in the Gazelle helicopter. *See Landol–Rivera*, 906 F.2d at 797 (holding that "where the fleeing suspect was armed, had threatened to kill his hostage, and had commandeered a car and abducted its driver, the decision to shoot toward the hijacked vehicle, by itself, falls far short of demonstrating reckless or callous indifference toward the hostage's rights"). Indeed, Mr. Bella concedes that the officers were not inspired by malice, contending instead that the officers' actions constituted "unwise, excessive zeal amounting to an abuse of official power that shocks the con-

science." *Hewitt*, 758 F.2d at 1379. Thus, Mr. Bella essentially stakes his claim on the remaining due process factor, arguing that the officers' use of potentially deadly force was "grossly disproportionate to the need [presented]." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981). The facts as alleged in Mr. Bella's complaint, however, do not support this theory.

According to the complaint, an armed, escaped inmate was aboard the Gazelle helicopter and Officers Meyers and Chamberlain knew the inmate was holding Mr. Bella hostage. Officer Chamberlain first hovered the Blackhawk directly in front of and above the Gazelle to prevent its takeoff. When this failed, Officer Meyers fired three shots at the Gazelle as it left Mid–Valley Air Park. One shot struck the Gazelle. Officer Meyers refrained from firing upon the Gazelle once it left Mid–Valley Air Park. Officer Chamberlain, piloting the Blackhawk in pursuit of the Gazelle, "boxed in" and flew "dangerously close" to the Gazelle. The officers' actions, which were taken in an attempt to force Mr. Bella to land the Gazelle helicopter, undoubtedly constituted potentially deadly force, but not force "grossly disproportionate" to the need presented.[9]

The use of potentially deadly force in this case is a far cry from the facts of those cases in which courts have found that police officers violated an individual's substantive due process rights. *See, e.g., Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989) (upholding jury verdict against four plain clothes police officers who were conducting "preventive rounds" in search of drug traffickers and, with guns drawn, approached a young couple sitting in a car and began shooting without warning when the driver hastily started the engine and drove away, with one bullet striking the driver in the back, damaging his spinal cord and ren-

---

**9.** Plaintiff alleges that a Customs Service radar aircraft had visual and radar contact with the Gazelle and that therefore the use of force was grossly disproportionate to the need presented. Plaintiff seems to suggest that the officers should have sat idly by until the entire episode came to a close, presumably when the Gazelle ran out of gas. Law enforcement is not so narrowly restricted during such tense hostage crises. Fur-

ther, plaintiff's argument conveniently overlooks the fact that, had the officers entertained such idle thoughts, the inmate possibly would have escaped, or worse yet, maimed or killed Mr. Bella. In the latter scenario, we might very well be considering here whether the officers violated Mr. Bella's rights by their *failure* to employ more active tactics.

dering him a paraplegic); *Fernandez v. Leonard*, 784 F.2d 1209, 1214–15 (1st Cir. 1986) (refusing to grant summary judgment on issue of qualified immunity for police officer where facts showed that officer deliberately shot an unarmed hostage three times at close range); *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 167 (5th Cir.1985) (upholding jury verdict against police officers who intentionally shot and killed a man they mistook for a fleeing criminal suspect), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987). Further, we must exercise additional care in this case because "[t]o hold that [the use of potentially deadly force] in such circumstances violates the constitutional rights of a hostage whom the officers are trying to free would be to hamstring seriously law enforcement officers in their efforts to resolve explosive situations." *Landol–Rivera*, 906 F.2d at 797.

In sum, Mr. Bella's complaint does not demonstrate that the defendants used grossly disproportionate force. Moreover, Mr. Bella suffered no physical injuries and he concedes that the officers lacked any improper motives or malice. We therefore conclude that his complaint fails to state a claim for excessive force under the Fifth Amendment.[10]

### III. Conclusion

Because Mr. Bella's complaint fails to state a constitutional claim under either the Fourth or Fifth Amendment, we REVERSE the order of the district court and REMAND with instructions to dismiss the complaint.

---

**10.** Plaintiff argues that he is entitled to engage in discovery prior to dismissal of his action. Plaintiff misunderstands the purpose of qualified immunity. Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), the Supreme Court has determined that unless the plaintiff's allegations state a violation of clearly established constitutional right, a defendant pleading immunity is entitled to dismissal before the commencement of discovery. *Id.; Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. The very purpose of qualified immunity is to "weed out" suits that fail to assert the violation of a clearly established constitutional right "without requiring a defendant ... to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert*, 500 U.S. at 231, 111 S.Ct. at 1793.