**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 18 2000**

**PATRICK FISHER**
**Clerk**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

GENA CHILDRESS and DUANE
CHILDRESS, individually and as next
friends of CAITLYN CHILDRESS, a
minor,

      Plaintiffs - Appellants,

    v.

CITY OF ARAPAHO, OKLAHOMA;
LARRY WILLIAMS; JERRY
MCGRATH; SAM SHELTON, Lake
Patrol Officer; THOR CARLSON;
DANNY HONEYCUTT, Trooper; JOE
WILLIAMS, Trooper; LYLE LUBBERS,
Trooper; MARVIN NOYES, Trooper;
C.L. PARKINS, Trooper; NICKY
SMITH; JERRY JONES; TIM
TROXELL; LT. BRUCE PEOPLES,

      Defendants - Appellees.

No. 98-6451

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. CIV-96-988-L)**

---

Roy S. Dickinson, Norman, Oklahoma (Robert Pottroff, Myers, Pottroff & Ball,
Manhattan, Kansas, with him on the brief), appearing for Plaintiffs-Appellants.

Jason C. Wagner, Collins, Zorn, Jones & Wagner, P.C., Oklahoma City,
Oklahoma, appearing for Defendants-Appellees McGrath and Jones.

Wellon B. Poe, Assistant Attorney General, Oklahoma City, Oklahoma (Kent McGuire and Phil Anderson, Whitten & McGuire, Oklahoma City, Oklahoma, for Appellees City of Arapaho and Smith; Chris J. Collins and Robert Applegate, Collins, Zorn, Jones & Wagner, P.C., Oklahoma City, Oklahoma, for Appellees Jones and McGrath, with him on the brief), appearing for Defendants-Appellees L. Williams, Shelton, Carlson, Honeycutt, J. Williams, Lubbers, Noyes, Parkins, Troxell, and Peoples.

---

Before **SEYMOUR**, Chief Judge, **HOLLOWAY**, and **TACHA**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

Plaintiffs filed suit under 42 U.S.C. § 1983, claiming that defendants violated their Fourth Amendment and substantive due process rights during a pursuit of escaped prison inmates. The district court dismissed plaintiffs' Fourth Amendment claims and entered summary judgment in favor of defendants on the due process claims. Plaintiffs appeal from both rulings. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

On August 5, 1995, two prisoners escaped from the Oklahoma State Reformatory in Granite. On August 7, the prisoners stole a gray automobile, two shotguns and a pistol from a family near Retrop. Later that day, the prisoners forced entry into the Childress house north of Elk City. They abducted Gena Childress and her two-year-old daughter, Caitlyn, and stole the family's minivan. One prisoner drove the minivan and the other the stolen gray vehicle.

The Oklahoma Highway Patrol aired a bulletin describing the stolen gray vehicle. A truck driver who heard the bulletin notified the Highway Patrol that the gray car was traveling in tandem with a minivan near Elk City. The truck driver saw a male driving each vehicle and reported that there appeared to be additional passengers in the minivan. At the request of the Highway Patrol, the truck driver followed the car and minivan for approximately six miles until they turned onto a road that would not support the weight of his vehicle. After the truck driver lost sight of the vehicles, one of the escapees drove the gray car into a pond in an attempt to conceal it. Both escapees and the hostages continued on in the minivan.

Shortly thereafter, a deputy with the Custer County Sheriff's Department encountered the minivan. He noticed three or four passengers in the van and radioed this information to dispatch. The deputy activated his lights and siren in an attempt to stop the vehicle, but the van began to accelerate. One of the escapees fired a shot at the deputy from the van.

Over the next forty minutes, more than nine law enforcement agencies established ten separate roadblocks in an effort to stop the minivan. Officers from the Custer County and Roger Mills County Sheriff Departments established the first two roadblocks. Neither the officers nor the escapees fired shots at either of these roadblocks. Defendant Sam Shelton set up the third roadblock and fired

-3-

one shot at the van. The district court found that, prior to discharging his gun, Shelton had heard a police broadcast about the possibility of hostages in the van. Officers from the Oklahoma Department of Corrections manned the fourth unsuccessful roadblock and did not fire any shots.

After the fourth roadblock, the encounters escalated. At the fifth roadblock, defendants Joe Williams and Dan Honeycutt both fired two rounds in an attempt to disable the vehicle. Both Williams and Honeycutt had heard the broadcast about the possibility of hostages. At the sixth roadblock, defendants Marvin Noyes and Lyle Lubbers fired on the van. Lubbers remembered hearing the hostage broadcast before the roadblock; Noyes did not recall ever receiving any information about hostages. As the van passed through the seventh roadblock, defendant Jerry Jones fired two rounds at the grill area of the vehicle, and defendant Thor Carlson fired two shots when the van passed his position. Both defendants fired additional shots at the rear of the van. At the eighth roadblock, defendant Nicky Smith fired one round. Defendants C.L. Parkins and Jerry McGrath had positioned a single vehicle as the ninth roadblock. Parkins fired two rounds at the left rear tire of the van, and McGrath fired on a tire and the engine compartment. After the van passed through this roadblock, Parkins saw one of the convicts hold Caitlyn Childress out the window. The Oklahoma Highway Patrol then broadcast this information.

The van reached the final roadblock less than two minutes after the broadcast concerning Caitlyn. Various defendants fired a total of twenty-one rounds at the van as it passed through an intersection. This fusillade disabled the vehicle, and the officers apprehended the escapees. Mrs. Childress and Caitlyn both suffered injuries during the chase. Mrs. Childress was shot in the hip, leg, lungs, chest, arm and hand. Caitlyn received injuries to her chest, legs and back. There is no dispute that the shots fired by defendants injured both Mrs. Childress and Caitlyn.

**II.**

42 U.S.C. § 1983 "provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." Radecki v. Barela, 146 F.3d 1227, 1229 (10th Cir. 1998). Plaintiffs assert that defendants' actions at the roadblocks effected a seizure in violation of the Fourth Amendment. The district court dismissed plaintiffs' § 1983 claim under Fed. R. Civ. P. 12(b)(6). The sufficiency of a complaint is a question of law, and we therefore review the district court's ruling de novo. Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim under the Fourth Amendment, plaintiffs must show both that a "seizure" occurred and that the

-5-

seizure was "unreasonable." Brower v. County of Inyo, 489 U.S. 593, 599 (1989). We have previously considered when police pursuit rises to the level of a Fourth Amendment seizure. Bella v. Chamberlain, 24 F.3d 1251 (10th Cir. 1994). In Bella, the plaintiff owned and operated a helicopter. Id. at 1253. A woman chartered the helicopter under false pretense and then forced the plaintiff to assist in the escape of some prison inmates. Id. Law enforcement personnel, in another helicopter, fired upon the plaintiff's helicopter and eventually forced him to land. Id. According to the plaintiff, law enforcement officials knew during the chase that he was an innocent hostage. Id.

We found that the shots fired by the officers did not result in a seizure of the plaintiff-hostage because "[t]he shots constituted an assertion of authority, but they did not cause [the plaintiff] to submit." Id. at 1256. We noted "that it may not be a foregone conclusion that a Fourth Amendment 'seizure' would have occurred even had the officer's shot accidentally hit [plaintiff]." Id. at 1256 n.6. Given the facts before us in Bella, we found it unnecessary to address that question further. Today, we reach the issue left undecided in the Bella footnote.

"Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Brower, 489 U.S. at 596. Plaintiffs contend that the police actions in

this case meet the Brower threshold of intent and thus qualify as a Fourth

Amendment seizure. Specifically, plaintiffs argue that the officers deliberately

fired upon the minivan at the final roadblock with knowledge that hostages were

inside. They claim this conduct qualifies as "willful" under Brower.

Other courts of appeal, construing Brower, have already decided the

question before us. In Landol-Rivera v. Cosme, 906 F.2d 791 (1st Cir. 1990), a

fast-food worker was taken hostage by an armed robber. In apprehending the

robber, police shot the hostage with a bullet intended for his captor. Id. at 792.

The First Circuit found that the police had not seized the fast-food worker,

"reject[ing] the notion that the 'intention' requirement [from Brower] is met by

the deliberateness with which a given action is taken." Id. at 795. The court

concluded that "[a] police officer's deliberate decision to shoot at a car

containing a robber and a hostage for the purpose of stopping the robber's flight

does not result in the sort of willful detention of the hostage that the Fourth

Amendment was designed to govern." Id.

Additional circuits presented with similar facts have reached the same

conclusion. Medeiros v. O'Connell, 150 F.3d 164, 169 (2nd Cir. 1998) (holding

that no seizure occurred when police officers wounded a hostage during pursuit of

a fugitive), Rucker v. Harford County, Md., 946 F.2d 278, 279 (4th Cir. 1991)

(holding that no seizure occurred when officers wounded a bystander in an

-7-

attempt to shoot the tires of a fugitive's car). But cf. Roach v. City of Fredericktown, Mo., 882 F.2d 294, 297 (8th Cir. 1989) (finding that a claim by individuals who were struck by a police car in pursuit of a fugitive "is most properly characterized as one invoking the protections" of the Fourth Amendment, but ultimately holding that the high speed pursuit was reasonable under the circumstances).

The police officers in the instant case did not "seize" plaintiffs within the meaning of the Fourth Amendment but rather made every effort to deliver them from unlawful abduction. The officers intended to restrain the minivan and the fugitives, not Mrs. Childress and Caitlyn. The injuries inflicted were the unfortunate but not unconstitutional "accidental effects of otherwise lawful conduct." Brower, 489 U.S. at 596. In keeping with our sister circuits, we hold that no Fourth Amendment seizure occurred in the instant case.

## III.

Plaintiffs also assert that the officers violated their Fourteenth Amendment guarantee of substantive due process. The district court entered summary judgment in favor of defendants on this § 1983 claim. We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct.

-8-

53 (1999).

In County of Sacramento v. Lewis, 523 U.S. 833 (1998), the Supreme Court clarified the substantive due process standard of culpability for an officer involved in a police pursuit. The Court held that "in a high-speed automobile chase aimed at apprehending a suspected offender . . . only a purpose to cause harm unrelated to the legitimate object of arrest" is sufficiently "shocking to the conscience" to establish a due process violation. Id. at 836. In rejecting a "deliberate indifference" standard of fault, the Court stressed that such a standard is workable "only when actual deliberation is practical." Id. at 851. Police officers giving chase make decisions "in haste, under pressure, and frequently without the luxury of a second chance." Id. at 853 (internal quotation marks and citation omitted). Given these pressures, the Court concluded that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." Id. at 854.

Applying Lewis, we have previously directed dismissal of claims brought on behalf of an innocent bystander killed during a police struggle with a suspect. Radecki v. Barela, 146 F.3d 1227, 1232 (10th Cir. 1998). The Lewis principles therefore apply whether the claimant is a police suspect or an innocent victim. The touchstone is whether the officers "acted with an intent to harm the participants or to worsen their legal plight." Id.

Reviewing the record before us, we find no genuine issue of material fact precluding summary judgment. Plaintiffs claim that the officers were grossly negligent, reckless and even deliberately indifferent to their plight. Nowhere do plaintiffs present specific facts suggesting that the officers harbored an intent to harm them. Thus, there is no constitutional liability under Lewis. We therefore affirm the district court's dismissal of plaintiffs' claims under 42 U.S.C. § 1983 and related provisions.[1]

**AFFIRMED.**

---

[1] In their initial complaint, plaintiffs also alleged that defendants conspired to abridge their constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986. The district court found that plaintiffs had abandoned these claims in their second amended complaint. Even assuming these claims were not abandoned below, we affirm the district court's dismissal. Section 1985(3), the subsection on which we presume plaintiffs rely, and Section 1986 create no independent substantive causes of action. Wheeler v. Swimmer, 835 F.2d 259, 261 (10th Cir. 1987). The only substantive claims plaintiffs assert are the constitutional grounds that we have rejected.