Linda GREEN, an individual, Plaintiff,

v.

Durwood FREEMAN, individually, and as an agent for Union Springs police department, and the City of Union Springs, Defendants.

Civil Action No. 2:04CV1054–T.

United States District Court,
M.D. Alabama,
Northern Division.

April 11, 2005.

Paul Douglas Esco, Esco & Benson LLC, Montgomery, AL, Richard Freeman Horsley, Goozee, King & Horsley, Birmingham, AL, for Plaintiff.

Alex L. Holtsford, Jr., Rick A. Howard, Nix, Holtsford, Gilliland, Higgins & Hitson PC, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

While being held hostage in a November 2002 bank robbery in Union Springs, Alabama, plaintiff Linda Green was hit twice in the right hand by gunshots fired by Police Officer Freeman as he attempted to shoot at the robbery suspect trying to exit the bank building with Green in tow. Green now sues in this federal court, naming both Union Springs and Officer Freeman as defendants. She asserts that Union Springs and Freeman violated her rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments (as enforced by 42 U.S.C.A. § 1983); she also asserts state-law claims of negligent retention, hiring, training, and supervision, and assault and battery.

This cause is currently before the court on the defendants' motion to dismiss. For the following reasons, Green's federal claims will be dismissed with prejudice, and her state-law claims will be dismissed for refiling, if she so chooses, in state court.

## I. Standard

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), and construes the complaint in the plaintiff's favor. *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232.

## II. Factual Background

The facts in this case, as developed thus far, are as follows. On November 1, 2002, Green entered the AmeriFirst Bank in Union Springs, Alabama to make a deposit, unaware that a robbery was taking place. As she entered the bank, one robbery suspect had already been shot by a Union Springs police officer. The other suspect was hiding behind the door through which she entered.[1] After Green entered the bank, the suspect hiding be-

---

1. Complaint (Doc. No. 1), p. 2.

hind the door took hold of her. He then held her at gunpoint as he dragged her across the bank back towards the door in an attempt to escape.[2] At some point, Green and the suspect became entangled and fell to the floor.

At that point, Freeman, one of several police officers who had apparently responded to the scene of the robbery, pointed his gun at the suspect.[3] Green then "pled with [Freeman] not to shoot his gun."[4] As the robbery suspect got up off the ground and attempted to leave the bank, Freeman fired his weapon, hitting Green twice in the right hand.[5] The complaint alleges that meanwhile, the robbery suspect managed to escape the bank. He was later caught at a different location.

Green alleges that, as a result of this incident, she suffered "serious personal injuries, pain and suffering, emotional distress and mental anguish."[6]

### III. Discussion

#### A. Federal Claims

In her complaint, Green asserts violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights, as enforced by § 1983. In her response to the defendants' motion to dismiss, Green stipulates to the dismissal of her Fourteenth Amendment claim.[7] Thus, only her Fourth, Fifth, and Sixth Amendment claims are at issue.

#### i. Fourth Amendment claim

Green asserts that her Fourth Amendment right was violated when Officer

Freeman fired his gun at the robbery suspect and struck her instead. In her complaint, she alleges that her injury was caused not by the use of excessive force against *her* person, but rather, "was directly and proximately caused" by Freeman's use of excessive force against the robbery suspect in attempting to effectuate his seizure.[8]

 The Fourth Amendment protects individuals against unreasonable searches and seizures. The rights it bestows are personal, and must be invoked by the person who experienced the allegedly unlawful search or seizure. *See, e.g., Minnesota v. Carter,* 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373 (1998). Although this principle is typically discussed in the context of whether a person has standing to challenge an illegal search, the notion applies equally to the prohibition against unreasonable seizures. *United States v. Padilla,* 508 U.S. 77, 81, 113 S.Ct. 1936, 1939, 123 L.Ed.2d 635 (1993) ("It has long been the rule that a defendant [has standing to challenge a] violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search *or seizure* ") (emphasis on seizure added). Thus, as a matter of law, Green may not herself assert a Fourth Amendment excessive-force claim by alleging that the robbery suspect's Fourth Amendment right to be free from unreasonable seizures was violated.

---

**2.** *Id.*

**3.** The facts as developed thus far do not indicate the circumstances under which Freeman entered the bank, how many other officers were on the scene, where exactly Freeman was positioned in the bank, or whether he had interacted with the robbery suspects at that point.

**4.** Complaint (Doc. No. 1), p. 2.

**5.** *Id.* at 3.

**6.** *Id.*

**7.** Plaintiff's response to motion to dismiss (Doc. No. 16), p. 2.

**8.** Complaint (Doc. No. 1), p. 5.

■ Even if Green had alleged in her complaint that her own Fourth Amendment right was violated by Freeman's actions, her claim would fail as a matter of law; under the circumstances alleged, she is unable to establish that she was subject to a Fourth Amendment "seizure."

The Supreme Court has held that "violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989). Thus, a seizure occurs "even when an unintended person or thing is the object of the detention or taking ... but the detention or taking itself must be willful." *Id.* Since *Brower*, lower courts addressing the issue of when a "seizure" has occurred have distinguished between situations where officers' actions are *directed* toward the particular individual alleging the Fourth Amendment violation, and those in which an injury is instead the "unintended consequence of government action." *Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir.1991). These courts have consistently held that an injury sustained under the former circumstances constitutes a Fourth Amendment seizure, but that one suffered under the latter does not.

Specifically, several circuits have concluded that no Fourth Amendment "seizure" occurs where a hostage is wounded by bullets intended for his or her captor. For example, in *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir.2000), the Tenth Circuit concluded that hostages held by escaped prison inmates did not suffer a Fourth Amendment violation when they were injured by officers' gunshots during pursuit of the inmates. In so holding, the Tenth Circuit emphasized,

> "The police officers in the instant case did not 'seize' plaintiffs within the meaning of the Fourth Amendment but rather made every effort to deliver them from unlawful abduction. The officers intended to restrain the minivan and the fugitives, not [the hostages]. The injuries inflicted were the unfortunate but not unconstitutional 'accidental effects of otherwise lawful conduct.' "

210 F.3d at 1157 (quoting *Brower*, 489 U.S. at 596, 109 S.Ct. at 1381). The First, Second, and Fourth Circuits have all reached identical conclusions when presented with similar facts. *See Landol–Rivera v. Cosme*, 906 F.2d 791 (1st Cir. 1990) (hostage who was shot in the jaw during police pursuit of robbery suspect did not suffer Fourth Amendment seizure); *Medeiros v. O'Connell*, 150 F.3d 164 (2d Cir.1998) (teenage hostage passenger riding in school van commandeered by armed robber was not "seized" for Fourth Amendment purposes when he was killed by police officer's bullet during ensuing chase); *Rucker v. Harford County*, 946 F.2d 278 (4th Cir.1991) (bystander's Fourth Amendment rights not implicated where he was inadvertently but fatally wounded by police officer's bullet during stand-off with criminal suspect).[9]

Green's situation is virtually identical to the hostage scenarios examined by the

---

9. Although the Eleventh Circuit has not had the opportunity to address this Fourth Amendment issue in a context exactly analogous to Green's, its reasoning in the cases it has examined is consistent with that of other circuits. *See, e.g., Vaughan v. Cox*, 343 F.3d 1323 (11th Cir.2003) (seizure occurred where police officer discharged firearm at vehicle and struck passenger in the spine; passenger was a criminal suspect, and was hit by a bullet that was intended to stop him, though not specifically intended to wound him); *Ansley v. Heinrich*, 925 F.2d 1339 (11th Cir.1991) (negligent conduct alone, absent any intentional government conduct, cannot form basis of a § 1983 claim premised on the Fourth Amendment).

First, Second, Fourth, and Tenth Circuits. She was taken hostage by a bank robbery suspect who was attempting to flee the building as the police tried to stop him. Green does not dispute the fact that Freeman intended to shoot the robbery suspect, not her.[10] Because the officer's force was not directed at her person, but rather, her injuries were the "unintended consequence of government action," *Ansley*, 925 F.2d at 1344, Green has failed to allege that she was "seized" within the meaning of the Fourth Amendment. Therefore, though her injuries are unfortunate, her Fourth Amendment claim is due to be dismissed.

### ii. Fifth Amendment claim

Green does not specify in her complaint how her Fifth Amendment rights were violated by Freeman's actions, simply alleging that the defendants "inflicted injury upon [her] in violation of her ... Fifth ... Amendment rights."

The Fifth Amendment provides various protections for individuals subject to criminal prosecutions, as well as the safeguard that "no person ... [shall] be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Green is not a criminal defendant. Furthermore, the court cannot conceive of how this case could involve the takings clause. Therefore, it assumes that Green intended to claim that her Fifth Amendment due-process right was violated.

■ The Fifth Amendment Due Process Clause serves as a limitation on the power

of the *federal* government; the Due Process Clause of the Fourteenth Amendment applies to States and municipalities. *Davidson v. City of New Orleans,* 96 U.S. 97, 99, 24 L.Ed. 616 (1877) ("The fifth amendment to the Constitution, which declares that no person shall be 'deprived of life, liberty, or property without due process of law ...,' is a limitation on the powers granted by that instrument to the Federal government, and not a restraint upon the States"); *see also Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–61, 47 L.Ed.2d 405 (1976). The rights protected by the two clauses are coextensive. *See, e.g., Screws v. United States,* 325 U.S. 91, 123, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) ("The Fifth Amendment contains a due process clause as broad in its terms restricting national power as the Fourteenth is of state power"). Therefore, individuals alleging due-process violations against state or municipal actors must bring their claims under the Fourteenth Amendment, rather than the Fifth.

Green's complaint clearly indicates that both Officer Freeman and the City of Union Springs are municipal actors, not agents of the federal government; therefore, she has not properly alleged a violation of her Fifth Amendment right, and her claim is due to be dismissed. Furthermore, although she originally alleged violations of the Fourteenth Amendment in her complaint, she has voluntarily stipulated to the dismissal of these claims.[11] It thus appears that she does not wish to pursue relief for her injuries based on a due-process theory.

■ Even if Green had not agreed to the voluntary dismissal of her Fourteenth

---

**10.** In her complaint, Green states, "Defendant [Freeman] used unreasonable and excessive force against the robbery suspect when he opened fire on the suspect while the sus-

pect was holding the Plaintiff hostage." Complaint (Doc. No. 1), p. 4.

**11.** Plaintiff's response to motion to dismiss (Doc. No. 16), p. 2.

Amendment substantive due-process claim, the court would have dismissed the claim; the Supreme Court's reasoning in *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), makes it clear that Green has failed to state a substantive due-process claim under the Fourteenth Amendment.

Lewis was a passenger on a motorcycle engaged in a high-speed chase with police officers. He was killed after the police car skidded into the back of the motorcycle after it tipped over. His parents subsequently brought a § 1983 action against the county, sheriff's department, and deputy, asserting violations of his substantive due-process right to life. Though the Court engaged in a somewhat labyrinthine analysis of the standard for substantive due-process violations, it concluded that in cases involving split-second decisions by police officers, the standard for demonstrating a substantive due-process violation is behavior that "shocks the conscience."

In elaborating on this standard, the Court distinguished between official conduct in certain custodial settings, to which a "deliberate indifference" standard applies, and cases where an officer has no opportunity for forethought. The Court made it clear that where an officer must make decisions "in haste, under pressure, and frequently without the luxury of a second chance," the officer must have intended the harm resulting from his actions before his conduct rises to the level of "conscience-shocking." 523 U.S. at 853, 118 S.Ct. at 1720. In so holding, it reasoned,

"To recognize a substantive due process violation in [circumstances involving split-second judgments] when only mid-level fault has been shown would be to forget that liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure to even care, indifference is truly shocking. But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed. Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."

523 U.S. at 853–54, 118 S.Ct. at 1720. (internal quotations and citations omitted).

Like an officer engaged in a high-speed chase, there is no question that Officer Freeman was also in the position of making a split-second decision without the benefit of time for reflection, when he became engaged in a stand-off with the robbery suspect holding Green hostage. Therefore, under *Lewis,* Green must allege in her complaint that Freeman intended to cause her harm in order to state a claim for violation of her Fourteenth Amendment right under these circumstances. Nowhere in her complaint does Green make such an allegation. Rather, she states that "the Defendant, Lieutenant Durwood [sic], and the City of Union

Springs negligently and with deliberate indifference to the rights of the Plaintiff ... inflicted injury upon the Plaintiff in violation of her Fourth, Fifth, Sixth and Fourteenth Amendment rights." [12]

The Supreme Court made it clear in *Lewis* that allegations of negligence or deliberate indifference are not enough in cases involving split-second decisions. Because she does not allege that Freeman intended to cause her harm, Green has failed to state a Fourteenth Amendment substantive due-process claim.

### iii. Sixth Amendment claim

■ As with her Fifth Amendment claim, Green does not specify in her complaint how her Sixth Amendment rights were violated by Freeman's actions, merely stating that the defendants "inflicted injury upon [her] in violation of her ... Sixth ... Amendment rights."

The Sixth Amendment protects the rights of the accused in criminal prosecutions. Specifically, it provides the accused with

> "the right to a speedy and public trial, by an impartial jury ... and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

U.S. Const. amend. VI.

Green has not alleged that she was, at any time relevant to this action, a person accused of a crime. Because the Sixth Amendment only affords protections to the criminally accused, the court finds that no relief could be granted on Green's Sixth Amendment claim, regardless of any set of facts that could be proved consistent with her allegations. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232. Accordingly, Green's Sixth Amendment claim is due to be dismissed as well.

### B. State-law claims

Green also claims that the defendants are liable under state law for negligent retention, hiring, training and supervision, and assault and battery.

■ 28 U.S.C.A. § 1367(c)(3) provides that a "district court may decline to exercise supplemental jurisdiction over a claim if ... the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims over which this court had original jurisdiction have now been resolved against Green, the court will dismiss the state-law claims without prejudice. *See* 28 U.S.C.A. § 1367(c)(3); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir.1995). This dismissal should not work to Green's disadvantage.[13]

### IV. Conclusion

For the foregoing reasons, the court concludes that Green's federal claims al-

---

12. Complaint (Doc. No. 1), p. 4.

13. Section 1367(d) provides for at least a 30–day tolling of any applicable statute of limitations so as to allow a plaintiff to re-file its claim in state court. The section states:
 "The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

leging violations of her Fourth, Fifth, Sixth, and Fourteenth Amendment rights are due to be dismissed. Consequently, in the absence of a remaining federal claim in this case, Green's state-law claims will be dismissed without prejudice.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Defendants Durwood Freeman and the City of Union Springs' motion to dismiss (Doc. No. 5) is granted as to plaintiff Linda Green's federal claims.

(2) Plaintiff Green's federal claims are dismissed with prejudice.

It is further ORDERED that plaintiff Green's remaining state-law claims are dismissed without prejudice pursuant to 28 U.S.C.A. § 1367.

It is further ORDERED that costs are taxed against plaintiff Green, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.