**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KANA FARRELL; ORIANA LEE
FARRELL, as an individual and O.B.O her
minor children, HEZEKIAH FARRELL,
II, KUSH FARRELL, MAGNIFICENT
FARRELL, and GILBRALTAR
FARRELL,

       Plaintiffs - Appellees,

v.

ELIAS MONTOYA,

       Defendant - Appellant,

and

TONY DETAVIS; ANTHONY LUNA;
NEW MEXICO STATE POLICE
DEPARTMENT; JOHN DOES, 1, 2, and
3,

       Defendants.

No. 16-2216

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:15-CV-01113-SMV-LAM)**
_____

Mark D. Standridge, Jarmie & Associates, Las Cruces, New Mexico, for Defendant-
Appellant Elias Montoya.

Kathryn J. Hardy (Alan H. Maestas, with her on the brief), Alan Maestas Law Office,
P.C., Taos, New Mexico, for Plaintiffs-Appellees.

_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Oriana Lee Farrell and her five children claim that Defendant Elias Montoya, while on duty as a New Mexico state police officer, violated their Fourth Amendment rights when he fired three shots at their minivan as it drove away from officers trying to effect a traffic stop. We hold that the district court should have granted Defendant summary judgment because the shots did not halt the Farrells' departure and, because they were fleeing, they were not seized at the time Montoya fired his weapon, even if they had a subjective intent to submit to authority.

## I. BACKGROUND

On October 28, 2013, Ms. Farrell was driving a minivan with her five children—Kana (age 16), Hezekiah (age 14), Kush (age 12), Magnificent (age 9), and Gilbraltar (age 6)—on Highway 518 near Taos, New Mexico, when Officer Tony DeTavis pulled her over for speeding. The events that followed were largely captured by the dash-cam video recorder in DeTavis's police cruiser. We supplement what is shown on the video with sworn statements, sometimes contradictory, by the participants.

A few minutes after initiating the stop, DeTavis approached the minivan parked on the right shoulder of the highway and explained to Ms. Farrell that he was going to give her a citation for going 71 mph in a 55 mph zone. He gave her two options: pay the penalty of $126 within 30 days or see a Taos magistrate within 30 days. For two or three

minutes Ms. Farrell refused to make a decision because she did not know where she would be in 30 days. Finally, DeTavis told her to turn off her engine while he informed the dispatcher that she was refusing to make a decision. As he walked back to his car, the minivan slowly pulled onto the road, continuing down the highway at a normal speed.

DeTavis returned to his car and followed the minivan with his sirens on, both cars traveling near the 55 mph speed limit. A minute later the minivan stopped again. DeTavis pulled up behind the minivan, exited his vehicle, opened the driver's door of the minivan, and said in a raised voice, "Get out of the vehicle right now." District court Docket 31, included in Aplt. App. Vol. 1 (hereinafter "Dash-cam Video") at 10:25–10:32. As he reached into the minivan in an apparent attempt to remove Ms. Farrell, several of the children screamed—shouting, among other things, "Leave my mom alone!" *Id.* at 10:35–10:37. A few seconds later Hezekiah left the minivan through the passenger-side sliding door. DeTavis told Ms. Farrell to tell her son to get back in the vehicle. As Hezekiah walked around the front of the minivan, DeTavis drew his Taser from his holster, stepped back, and pointed it at Hezekiah. Ms. Farrell testified that she had believed it to be a gun. Hezekiah reentered the minivan. After Ms. Farrell refused to comply with DeTavis's demand that she get out of the vehicle, he called for backup, using the radio on his shoulder. He tried to pull her out, while the children cried and screamed, "Get off of her!" *Id.* at 11:54. For about four minutes, DeTavis continued to command Ms. Farrell to get out of the vehicle to talk with him. But she said that that her children were scared and that she was worried that he would not be peaceful.

Eventually, Ms. Farrell asked DeTavis to shake her hand as a sign that he would be peaceful. When he complied, she emerged and walked with DeTavis to the back of the minivan. DeTavis informed her that two officers would be arriving soon and told her to turn around to face the vehicle. Instead she walked quickly toward the driver's door of the minivan, with DeTavis following. As she reached for the door, he grabbed her right wrist to keep her from getting back in the minivan, while the children screamed and Hezekiah again left the minivan. He walked toward his mother and DeTavis. DeTavis shouted at him to get back in the vehicle, but Hezekiah came toward him and tried to pull DeTavis's hand off his mother. Hezekiah tussled with DeTavis, apparently attempting to grab his hands, until DeTavis drew his Taser and pointed it at Hezekiah. DeTavis repeatedly commanded, "Get down on the ground!" before running at Hezekiah, Taser drawn. *Id.* at 16:45–17:05. Hezekiah ran around the front of the minivan and climbed in through the passenger-side sliding door. DeTavis followed and tried to prevent the children from closing the door. While DeTavis was engaged with Hezekiah, the other Farrells had been screaming and jumping in and out of the minivan.

As another police cruiser arrived, DeTavis opened the sliding door and pointed the Taser into the minivan. Ms. Farrell and all the children were in their vehicle. Hezekiah then managed to close the sliding door as a third police cruiser, driven by Defendant Montoya, arrived. Officer Anthony Luna, who had arrived in the second cruiser, ran to the passenger side of the minivan. DeTavis pulled his baton from his belt and yelled, "Get them out!" Dash-cam Video at 17:12–13. Luna asked, "He got a gun?" and DeTavis responded, "No." *Id.* at 17:13–15. After trying the door handle of the sliding

4

door, Luna drew his gun from its holster, shouting, "Open the fucking door!" *Id.* at 17:16.

Defendant Montoya then exited his police cruiser, drew his gun, and faced the minivan. DeTavis raised his baton over his head and hit the rear passenger window four times, breaking it. Montoya moved behind the driver's side of the rear of the minivan. Just after DeTavis's baton hit the window a fourth time, the minivan began to drive away at a moderate speed. Montoya, straddling the white line delineating the road's shoulder, aimed his gun in the direction of the minivan and fired three shots. The minivan neither slowed nor stopped as the shots were fired. On appeal it is undisputed that no bullet hit the minivan or the Farrells inside. Montoya's affidavit states that he was aiming at the left rear tire.

The three officers returned to their vehicles and pursued the Farrells down Highway 518, reaching speeds of 100 mph during the chase. When Ms. Farrell approached a more congested area, she weaved through traffic, driving on the wrong side of the road on several occasions. According to affidavits by Ms. Farrell and Kana, Kana called 911 during the chase, and the family looked for a police station at which to pull over because they were afraid that the three officers would harm or kill them. More than four minutes after the chase began, the Farrells drove into a hotel parking lot and surrendered.

The Farrells filed a complaint in New Mexico state court asserting claims against Officer Montoya and other defendants under 42 U.S.C. § 1983, and the defendants removed the case to the United States District Court for the District of New Mexico. The

5

claim at issue in this appeal is that Montoya violated the Fourth Amendment by using excessive force against the Farrells when he fired three shots at their vehicle. Invoking qualified immunity, Montoya moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and for summary judgment under Federal Rule of Civil Procedure 56. The district court granted the summary-judgment motion in part, but denied summary judgment (implicitly denying the motion for judgment on the pleadings) with respect to his firing three shots toward the van. Montoya appeals this denial. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

## II. DISCUSSION

### A. Standard of Review and Plaintiffs' Burden

We review de novo the denial of a summary-judgment motion raising a qualified-immunity defense. *See Bella v. Chamberlain*, 24 F.3d 1251, 1254 (10th Cir. 1994). "[The] defense of qualified immunity . . . shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Gutierrez v. Cobos*, 841 F.3d 895, 899 (10th Cir. 2016) (citations and internal quotation marks and ellipsis omitted).

Motions for summary judgment based on qualified immunity are treated differently than other summary-judgment motions. After a defendant asserts a qualified-immunity defense, the plaintiff must meet the "heavy two-part burden," *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001), of showing that "(1) a reasonable jury could find facts supporting a violation of a constitutional right, [and] (2) [the constitutional right]

6

was clearly established at the time of the defendant's conduct," *Gutierrez*, 841 F.3d at 900–01. "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 900.

## B. Excessive Force

The Farrells claim that a jury could find that their constitutional rights were violated because Montoya used excessive force in violation of the Fourth Amendment when he fired his gun at their minivan. The Fourth Amendment applies to "searches and seizures." U.S. Const. amend. IV. "[W]ithout a seizure, there can be no claim for excessive use of force." *Jones v. Norton,* 809 F.3d 564, 575 (10th Cir. 2015). To establish their claim, the Farrells therefore "must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010). "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991)) (brackets omitted).

The leading Supreme Court opinion discussing what constitutes a Fourth Amendment seizure in the present context is *Hodari D.* In that case Hodari had fled when he saw police officers approaching, and one of them gave chase. *See Hodari D,* 499 U.S. at 622–23. As Hodari ran, he tossed away what turned out to be a small amount

7

of crack cocaine. *See id.* at 623. He moved to suppress the evidence, saying that it was the fruit of an unlawful seizure. *See id.* The Supreme Court, however, held that he was not seized when he discarded the crack cocaine because he was fleeing from the officer and so had not submitted to the officer's authority. *See id.* at 629. Following *Hodari D,* we held in *Brooks,* 614 F.3d at 1221–25, that a fleeing suspect was not seized even though he was struck by an officer's bullet because he continued to flee and did not submit to the officers pursuing him. The shot "clearly did not terminate [the suspect's] movement or otherwise cause the government to have physical control over him." *Id.* at 1224. The Farrells cite *Lundstrom v. Romero*, 616 F.3d 1108, 1122 (10th Cir. 2010), but it is not to the contrary. The focus of the opinion was on the reasonableness of the officer's actions, not whether there was a seizure; and when the officer in that case pointed her gun at the suspect, the suspect complied with her demands.

The application of controlling precedent to our case is straightforward. The Farrells were fleeing when Montoya fired his gun at their vehicle. Like the defendants in *Hodari D* and *Brooks,* they were not seized because, in fleeing, they were not submitting to the officers. Because they were not seized when Montoya fired his gun, there can be no excessive-force claim. *See Brooks*, 614 F.3d at 1219. Therefore, no reasonable jury could "find facts supporting a violation of a constitutional right," and the Farrells cannot overcome Montoya's qualified-immunity defense. *See Gutierrez*, 841 F.3d at 900–01.

The Farrells argue that they momentarily halted when Officer Montoya pointed his gun at the minivan, thereby submitting to his show of authority. We have indicated, however, that a momentary pause is not submission. Not long ago, in holding that a

8

defendant had not been seized, we quoted with apparent approval the Second Circuit's statement that "'to comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for there is no seizure without actual submission.'" *Salazar*, 609 F.3d at 1066 (quoting *United States v. Baldwin,* 496 F.3d 215, 218 (2d Cir. 2007) (suspect was not seized when he stopped his car in response to police sirens and lights but then drove away when officers got out of their car and approached suspect's car on foot)) (further internal quotation marks omitted). And in any event, the dash-cam video contradicts the factual basis of the argument; there was no pause in the minivan's departure. We therefore cannot credit the Farrells' assertion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

The Farrells also argue that they submitted to DeTavis when they pulled over (twice) before Montoya arrived, creating a seizure that continued at least until Montoya fired his gun. But neither this court, nor any court of which we are aware, has adopted the concept of an ongoing seizure[1] under which once a person is seized, the seizure is

---

[1] The Farrells' ongoing-seizure argument should not be confused with the continuing-seizure theory suggested by Justice Ginsburg in her concurrence in *Albright v. Oliver*, 510 U.S. 266, 277–79 (1994) (Ginsburg, J., concurring). The concurrence adopted the view that an arrested person continues to be seized within the meaning of the Fourth Amendment while awaiting trial under conditions of release. This court has declined to follow the concurrence. *See Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007). More importantly, it is irrelevant to the issue before us.

deemed to continue even after the individual takes flight. And the concept is contrary to *Hodari D. See* 499 U.S. at 625 ("To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity. . . . A seizure is a single act, and not a continuous fact."). Although the Farrells cite several opinions purportedly supporting the proposition that a person who flees after submitting to a show of authority remains seized, they misread the opinions. The cited opinions do not hold that a suspect who flees after being seized is still considered seized. Rather, they hold that if the initial seizure was unlawful, then what the suspect did while fleeing (such as disposing of a weapon) may be considered fruit of the prior unlawful seizure. *See United States v. Brodie*, 742 F.3d 1058, 1060–64 (D.C. Cir. 2014) (defendant submitted to police authority by putting hands on car as directed, but he then decided to flee, discarding three guns as he did so; court holds that defendant was seized when he put hands on car, that the seizure was unlawful, and that the flight and discarding of guns were fruits of officers' unlawful conduct); *United States v. Dupree*, 617 F.3d 724, 725–27 (3d Cir. 2010) (affirming district-court decision suppressing evidence abandoned by defendant who fled after being seized because abandonment was precipitated by unlawful seizure); *United States v. Coggins*, 986 F.2d 651, 652–55 (3d Cir. 1993) (stating that abandoned property must be suppressed when abandonment is precipitated by unlawful seizure but holding that seizure of defendant before he fled and discarded bags of cocaine was lawful seizure); *United States v. Morgan*, 936 F.2d 1561, 1567–1568 (10th Cir. 1991) (brief seizure occurred when police officer initially stopped defendant and

10

defendant was seized again when he was tackled and arrested after he fled; but court does not state that he was seized while fleeing between these two seizures). Those opinions are irrelevant here because the Farrells' claim on appeal does not rely on any allegedly unlawful seizure before they drove off the second time.

The Farrells next argue that even if ongoing submission is required for a seizure, they continued to submit as they fled the three officers by calling 911 and looking for a police station at which to pull over. But their intentions are irrelevant to their claim. "A submission to a show or assertion of authority requires that a suspect *manifest compliance* with police orders." *United States v. Martin*, 613 F.3d 1295, 1300 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added). In *Martin* we held that an individual who did not follow police instructions to turn around and place his hands on the wall did not manifest intent to submit. *See id.* at 1300–01; *see also United States v. Holloway*, 499 F.3d 114, 117 (1st Cir. 2007) (defendant who failed to comply with police orders, shoved companion into officers, and attempted to flee did "not manifest an intent to submit to the officers' authority"). When the Farrells drove away from the three officers and led them on a high-speed chase they were hardly manifesting compliance. Their alleged subjective intentions, like most subjective intentions, were not material to the Fourth Amendment issue.

Finally, the Farrells argue that Montoya's gun shots constituted excessive force even if the Farrells did not submit to a show of authority from Montoya or the other officers. In support, they cite *Austin v. Hamilton*, 945 F.2d 1155, 1157 (10th Cir. 1991), which held that plaintiffs could make out an excessive-force claim although police

11

reported that the plaintiffs had been "unruly and abusive."  The Farrells contend that the *Austin* plaintiffs could not have "submitted" if they were "unruly and abusive."  They ignore, however, that the *Austin* plaintiffs were handcuffed in a law-enforcement office and there was no dispute about whether the plaintiffs were physically restrained by the officers; therefore, that opinion does not address whether submission is required when plaintiffs are not physically restrained.  *Austin* is hardly grounds for ignoring our subsequent clear precedent requiring submission.

In short, when Montoya fired at the van, the Farrells were fleeing.  Though they had been seized moments before, that seizure ended when they no longer submitted to the officers' authority.  And Montoya's shots themselves did not effect a seizure because the van continued its departure.  The Farrells' alleged intent to submit when they could reach a police station was irrelevant because their conduct—the flight from the officers—did not manifest submission.  As there was no seizure, there could be no unreasonable seizure, even if Montoya was using deadly force.  The Farrells' claims against Montoya fail for lack of any violation of the Fourth Amendment.

## III.    CONCLUSION

We **REVERSE** the district court's denial of summary judgment in favor of Montoya on the excessive-force claims.