**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHAD E. OSTERHOUT,

    Plaintiff - Appellee,

v.

KENDALL MORGAN,

    Defendant - Appellant,

and

JASON TIMMS; LEFLORE COUNTY
BOARD OF COUNTY
COMMISSIONERS,

    Defendants.

No. 18-7023
(D.C. No. 6:17-CV-00099-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

Chad E. Osterhout brought this action under 42 U.S.C. § 1983 and Oklahoma

law alleging Deputy Sheriff Kendall Morgan and another officer used excessive force

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in arresting him after a short, high-speed chase. Officer Morgan appeals the district court's order denying his motion for summary judgment based on qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     JURISDICTION

An order denying summary judgment is ordinarily not a final decision appealable under 28 U.S.C. § 1291, but we may review an order denying summary judgment based on qualified immunity "to the extent it turns on abstract issues of law." *Leatherwood v. Welker*, 757 F.3d 1115, 1117-18 (10th Cir. 2014); *see Henderson v. Glanz*, 813 F.3d 938, 947 (10th Cir. 2015) (stating court has jurisdiction to review such orders under the collateral order doctrine). But "[w]e do not have jurisdiction . . . over questions of evidentiary sufficiency, i.e., which facts a party may, or may not, be able to prove at trial." *Leatherwood*, 757 F.3d at 1118 (internal quotation marks omitted). Accordingly, for appellate jurisdiction to exist, the defendant must ordinarily raise only legal challenges to the denial of qualified immunity and must consider any material disputed facts in the light most favorable to the plaintiff in presenting his arguments. *See Henderson*, 813 F.3d at 948.

At our request, both parties addressed our jurisdiction to hear this appeal in their briefs. Mr. Osterhout argues jurisdiction is lacking because Officer Morgan failed to state the facts in the light most favorable to Mr. Osterhout in a few respects. To the extent this is true, these misstatements are not material to Officer Morgan's arguments or to the issues presented on appeal. Officer Morgan's arguments on appeal are legal in nature, as he alleges that under the facts viewed in the light most

favorable to Mr. Osterhout, a reasonable jury could not find that the force he used against Mr. Osterhout violated Mr. Osterhout's constitutional rights and, even if so, that the law concerning the constitutionality of his actions was not clearly established at the time of the incident. We have jurisdiction to decide both questions. *See Leatherwood*, 757 F.3d at 1118.

## II. BACKGROUND

In reviewing the district court's summary judgment order, we also view the facts in the light most favorable to Mr. Osterhout and draw all reasonable inferences in his favor. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Though Officer Morgan disputes material portions of this account, for summary judgment purposes we resolve such "genuine disputes of fact" in favor of Mr. Osterhout. *McCoy v. Meyers*, 887 F.3d 1034, 1039 (10th Cir. 2018) (internal quotation marks omitted). The following facts are based on the record viewed in this light.

On the evening of June 27, 2015, Mr. Osterhout was riding a motorcycle on the Talimena Drive, a scenic by-way in southeastern Oklahoma and western Arkansas. During the ride he stopped at a house on Nubbin Ridge Road in rural LeFlore County, Oklahoma to visit a woman he had been communicating with on Facebook. When he left the house, Mr. Osterhout travelled a few hundred yards on the road before stopping to light a cigarette. He noticed a car coming towards him and motioned for it to pass him. When the car instead sped up towards him, Mr. Osterhout became alarmed and rode away from the car at a high rate of speed.

3

The car followed him. Mr. Osterhout did not realize at the time that the car was a law enforcement vehicle.

The car chasing Mr. Osterhout was a LeFlore County Sheriff's vehicle without roof-top lights driven by Deputy Jason Timms with Undersheriff Morgan as the passenger. They had just pulled into the driveway of Timms' house when they heard Mr. Osterhout rev his motorcycle's engine and pull onto Nubbin Ridge Road. They reported later they decided to investigate Mr. Osterhout because the house he was leaving was a suspected drug house. According to the officers, they activated their sirens and police lights after Mr. Osterhout sped away from them. Mr. Osterhout disputes that the officers activated their siren and did not associate the blue lights he saw after the chase began with the police, because they were not the familiar red and blue flashing police lights.

After travelling approximately a quarter of a mile, Mr. Osterhout reached the intersection of Nubbin Ridge Road and Highway 271/59. He ran the stop sign at the intersection and crossed the four-lane highway. When he turned to see whether the car was still chasing him, Mr. Osterhout saw the LeFlore County markings on the side of the car and for the first time realized it was a law enforcement vehicle. He immediately stopped the motorcycle on the side of the highway. The sheriff's vehicle arrived a moment later and struck the backside of the motorcycle, throwing Mr. Osterhout off the motorcycle and into the ditch. Mr. Osterhout immediately stood up with his hands in the air, facing the patrol car and blinded by its head lights. Officer Morgan appeared out of the lights and without warning hit Mr. Osterhout in

4

the face with his closed fist and/or a flashlight. The blow knocked Mr. Osterhout to the ground, cut his face, and broke his nose and a bone in his forehead. While Mr. Osterhout was lying on the ground with his hands still overhead, Officer Morgan handcuffed him and then kneed him several times in the ribs. At no point during this encounter did Mr. Osterhout resist Officer Morgan or attempt to flee.[1] Mr. Osterhout further testified in his deposition that as Officer Morgan kneed him in the ribs he said "Take that, you hippy motherf***r. That's what you get for coming to my town, you hippy motherf***r." Aplt. App. at 249.

Officers Morgan and Timms transported Mr. Osterhout to the hospital for treatment of his injuries. They then released him from the hospital on his own recognizance after citing him for driving under the influence (DUI), attempting to elude a police officer, and resisting arrest. The officers did not administer a field sobriety test or request testing related to their DUI citation while Mr. Osterhout was at the hospital.

Mr. Osterhout sued Officers Morgan and Timms under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment and the Board of County Commissioners for LeFlore County under Oklahoma law for the officers'

_____

[1] Officer Morgan's account of his encounter with Mr. Osterhout is quite different. He testified in his deposition that Mr. Osterhout started to run away from him after he was thrown from his motorcycle, ignored verbal commands to stop and show his hands, and then turned and moved towards the officer aggressively with clenched fists before Officer Morgan struck him in the face. Officer Morgan further testified that Mr. Osterhout resisted being handcuffed after being knocked to the ground and that he kneed Mr. Osterhout in the ribs before he was handcuffed in order to subdue him.

alleged assault and battery and negligent use of excessive force. Officers Morgan and Timms moved for summary judgment on the § 1983 claim, asserting qualified immunity.

The district court granted summary judgment for Officer Timms, holding he was entitled to qualified immunity for bumping Mr. Osterhout's motorcycle with the patrol car because his operation of the motorcycle had posed a threat to the officers and the public during the chase and because there was no law clearly establishing that bumping a motorcycle at the conclusion of a chase violated the rider's constitutional rights. But it denied summary judgment to Officer Morgan, holding that under the evidence presented by Mr. Osterhout, a reasonable jury could find that Officer Morgan used excessive force in striking Mr. Osterhout when he first approached him and again in kneeing Mr. Osterhout after he was handcuffed. The district court further found that the law at the time of the violations clearly established that the use of force in both instances was excessive under the facts viewed in the light most favorable to Mr. Osterhout.

On appeal, Officer Morgan concedes the district court properly denied summary judgment as to his assertion of qualified immunity for his second, allegedly post-restraint use of force on Mr. Osterhout. The only issue on appeal, therefore, is whether the district court properly denied summary judgement on Officer Morgan's claim that he has qualified immunity for striking Mr. Osterhout in the face when Mr. Osterhout was allegedly standing still with his hands in the air.

## III. DISCUSSION

### A. Standard of Review

We review the district court's denial of summary judgment de novo, viewing the factual record and making reasonable inferences from it in the light most favorable to the non-moving party. *See Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law. *Bird*, 832 F.3d at 1199 (internal quotation marks and brackets omitted).

### B. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). When a defendant asserts a qualified-immunity defense on summary judgment, "the plaintiff must meet the heavy two-part burden of showing that (1) a reasonable jury could find facts supporting a violation of a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's conduct." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (internal citations, alterations and quotation marks

omitted). If the plaintiff fails to make either showing, a court must recognize the defendant's qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Officer Morgan contends the district court erred in denying him qualified immunity for striking Mr. Osterhout in the face because, even crediting Mr. Osterhout's evidence for purposes of summary judgment, the evidence does not show either a constitutional violation or, if one occurred, that it was clearly established at the time that this use of force was unconstitutional. We address both contentions below and conclude the district court properly denied qualified immunity.

### 1. Violation of a constitutional right

"When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan*, 572 U.S. at 656. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). The "proper application" of the Fourth Amendment's reasonableness test "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

8

In considering these and any other relevant factors, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The inquiry "is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Considering the three *Graham* factors here, Officer Morgan does not dispute that the evidence, viewed in the light most favorable to Mr. Osterhout, shows that Mr. Osterhout was not suspected of a serious crime and that he was not actively resisting arrest or seeking to evade arrest when Officer Morgan hit him in the face with his fist or flashlight. Thus both of these factors weigh in favor of finding Officer Morgan's use of force was objectively unreasonable and therefore excessive. But Officer Morgan contends his action was nonetheless objectively reasonable, and hence no constitutional violation occurred, because a reasonable officer in his position would have believed Mr. Osterhout posed an immediate threat to the officers and the public at the time Officer Morgan struck him. In support of this contention, Officer Morgan points to Mr. Osterhout having raced away from the officers' patrol car on his motorcycle at a high speed for approximately one-quarter of a mile,

9

running a stop sign at the highway crossing, and then crossing the four-lane highway before stopping his motorcycle on the highway's edge. Given these circumstances and "the high-stress and swiftly evolving situation," Officer Morgan argues it was objectively reasonable for him to perceive that Mr. Osterhout posed an immediate threat to the officers and others and for him to hit Mr. Osterhout in the face "to defend himself from that potential threat of harm." Aplt. Opening Br. at 13.

We are not persuaded. Even if Mr. Osterhout's operation of the motorcycle had previously posed a threat to the officers or members of the public, the circumstances had changed. The high-speed chase had ended, Mr. Osterhout was no longer on his motorcycle and, viewing the evidence in the light most favorable to him, he was standing still, facing the patrol car with his arms raised when Officer Morgan approached him. A reasonable jury could conclude based on this evidence that Officer Morgan "should have been able to recognize and react to the changed circumstances," *McCoy*, 887 F.3d at 1050 (internal quotation marks omitted), and further conclude that under these circumstances, a reasonable officer would not have believed that Mr. Osterhout posed an immediate threat to the officers or the public. Accordingly, the final *Graham* factor also weighs in favor of finding under *Graham*'s reasonableness test that Officer Morgan used excessive force in striking Mr. Osterhout in the face without warning. Viewing the evidence in the light most favorable to Mr. Osterhout, therefore, a reasonable jury could conclude that this force violated Mr. Osterhout's Fourth Amendment rights.

10

## 2. Clearly established law

"The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." *Tolan*, 572 U.S. at 656 (internal quotation marks omitted). The focus of this analysis "is whether the state of the law at the time of an incident provided fair warning to the defendant[] that [his] alleged conduct was unconstitutional." *Id.* (internal alternations and quotation marks omitted). A plaintiff may make this showing by pointing to Supreme Court or Tenth Circuit decisions or to the clearly established weight of authority from other courts, existing at the time of the alleged violation. *See Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016). Although there need not be a "case directly on point for a right to be clearly established," *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted), "[a]n officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate," *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal citations, alternations and quotation marks omitted). As a result, courts must be careful not to define "clearly established law at a high level of generality" and must instead ensure that it is "particularized to the facts of the case." *White*, 137 S. Ct. at 552 (internal quotation marks omitted). In sum, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is

11

doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).

The district court held that our preexisting precedent made clear to a reasonable officer in Officer Morgan's position that striking a person under the circumstances described by Mr. Osterhout was unconstitutional. We agree. "[A]n officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are no substantial grounds for a reasonable officer to conclude that there was a legitimate justification for acting as [he] did." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007) (internal quotation marks omitted). Thus, we have concluded force was unconstitutional when it was used against plaintiffs, like Mr. Osterhout, "who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance." *McCoy*, 887 F.3d at 1052 n.21 (describing Tenth Circuit cases predating the present incident). For example, in *Morris v. Noe*, 672 F.3d 1185, 1190, 1195-96 (10th Cir. 2012), we held officers violated the plaintiff's Fourth Amendment rights when they threw him to the ground forcefully and without warning even though he had his hands raised, posed little or no threat to them or bystanders, was neither resisting arrest nor attempting to flee, and was suspected, at most, of misdemeanor assault. Similarly, in *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1309-10, 1315 (10th Cir. 2002), we held the district court erred in granting qualified immunity to an officer where the plaintiff, whom the officer suspected of committing credit card fraud, had presented evidence that the officer forcefully pushed him into a storefront window and wrenched his arm

12

up his back before handcuffing him, despite the fact that the plaintiff was not resisting arrest or acting belligerently. And in *Casey*, we held that a reasonable jury could find an officer's use of force was excessive when he without warning grabbed and then tackled the plaintiff, who was suspected of a nonviolent misdemeanor, even though the plaintiff was not threatening anyone and was not attempting to flee. 509 F.3d at 1282-83.

In light of these cases and others like them, it would have been obvious to Officer Morgan that it was unconstitutional for him to use violent force on Mr. Osterhout when he was not resisting arrest, not attempting to flee, and there was no objective reason to believe that he posed an immediate threat to the officers or the public.

Officer Morgan challenges this conclusion, arguing that the immediate threat Mr. Osterhout posed distinguishes this case from our precedent and precludes a finding that he had fair warning from these cases that striking Mr. Osterhout in the face was unconstitutional. But as discussed in the previous section, viewing the evidence in the light most favorable to Mr. Osterhout, a reasonable jury could reject the assertion that Mr. Osterhout objectively posed an immediate threat. The district court therefore properly concluded that preexisting Tenth Circuit precedent clearly established that Officer Morgan's conduct, under Mr. Osterhout's version of the disputed facts, was unconstitutional.

13

## IV.   CONCLUSION

For the reasons stated above, we affirm the district court's denial of qualified immunity to Officer Morgan on summary judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge