**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROXANNE TORRES,

    Plaintiff - Appellant,

v.

JANICE MADRID; RICHARD
WILLIAMSON,

    Defendants - Appellees.

No. 18-2134
(D.C. No. 1:16-CV-01163-LF-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

In this excessive-force case, Roxanne Torres appeals from a district court order

that granted the defendants' motion for summary judgment on the basis of qualified

immunity.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

Early in the morning on July 15, 2014, New Mexico State Police officers went to

an apartment complex in Albuquerque to arrest a woman, Kayenta Jackson, who was

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

"involved with an organized crime ring." Aplt. App. at 120. The officers saw two individuals standing in front of the woman's apartment next to a Toyota FJ Cruiser. The Cruiser was backed into a parking spot, with cars parked on both sides of it. The officers, who were wearing tactical vests with police markings, decided to make contact with the two individuals in case one was the subject of their arrest warrant.

As the officers approached the Cruiser, one of the individuals ran into the apartment, while the other individual, Torres, got inside the Cruiser and started the engine. At the time, Torres was "trip[ping] . . . out" from having used meth "[f]or a couple of days." *Id.* at 108.

Officer Richard Williamson approached the Cruiser's closed driver-side window and told Torres several times, "Show me your hands," as he perceived Torres was making "furtive movements . . . that [he] couldn't really see because of the [Cruiser's] tint[ed]" windows. *Id.* at 124 (internal quotation marks omitted). Officer Janice Madrid took up a position near the Cruiser's driver-side front tire. She could not see who the driver was, but she perceived the driver was making "aggressive movements inside the vehicle." *Id.* at 115.

According to Torres, she did not know that Williamson and Madrid were police officers, and she could not hear anything they said. But when she "heard the flicker of the car door" handle, she "freak[ed] out" and "put the car into drive," thinking she was being carjacked. *Id.* at 205.

When Torres put the car in drive, Officer Williamson brandished his firearm. At some point, Officer Madrid drew her firearm as well. Torres testified that she "stepped

2

on the gas . . . to get away," and the officers "shot as soon as the [Cruiser] creeped a little inch or two." *Id.* at 206. Officer Madrid testified that the Cruiser "drove at [her]" and she fired "at the driver through the windshield" "to stop the driver from running [her] over." *Id.* at 114. Officer Williamson testified that he shot at the driver because he feared being "crush[ed]" between the Cruiser and the neighboring car, as well as "to stop the action of [the Cruiser] going towards [Officer] Madrid." *Id.* at 125.

Two bullets struck Torres. She continued forward, however, driving over a curb, through some landscaping, and onto a street. After colliding with another vehicle, she stopped in a parking lot, exited the Cruiser, laid down on the ground, and attempted to "surrender" to the "carjackers" (who she believed might be in pursuit). *Id.* at 208.

Torres "was [still] tripping out bad." *Id.* She asked a bystander to call police, but she did not want to wait around because she had an outstanding arrest warrant. So, she stole a Kia Soul that was left running while its driver loaded material into the trunk. Torres drove approximately 75 miles to Grants, New Mexico, and went to a hospital, where she identified herself as "Johannarae C. Olguin." *Id.* at 255. She was airlifted to a hospital in Albuquerque, properly identified, and arrested by police on July 16, 2014. She ultimately pled no contest to three crimes: (1) aggravated fleeing from a law-enforcement officer (Officer Williamson); (2) assault upon a police officer (Officer Madrid); and (3) unlawfully taking a motor vehicle.

In October 2016, Torres filed a civil-rights complaint in federal court against Officers Williamson and Madrid. She asserted one excessive-force claim against each officer, alleging that the "intentional discharge of a fire arm [sic] . . . exceeded the degree

3

of force which a reasonable, prudent law enforcement officer would have applied." *Id.* at 15, 16. She also asserted a claim against each officer for conspiracy to engage in excessive force, alleging that the officers had "formed a single plan through non-verbal communication . . . to use excessive force." *Id.* at 15, 16.

The district court construed Torres's complaint as asserting the excessive-force claims under the Fourth Amendment, and the court concluded that the officers were entitled to qualified immunity. It reasoned that the officers had not seized Torres at the time of the shooting, and without a seizure, there could be no Fourth Amendment violation.

## DISCUSSION
### I. Standards of Review

"We review the district court's summary judgment decision de novo, applying the same standards as the district court." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1046 (10th Cir. 2017). Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Ordinarily, once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine triable issue. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). But where, as here, a defendant seeks summary judgment on the basis of qualified immunity, our review is somewhat different.

4

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). First, "[t]he plaintiff must demonstrate on the facts alleged . . . that the defendant violated [her] constitutional or statutory rights." *Id.* While "we ordinarily accept the plaintiff's version of the facts," we do not do so if that version "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (internal quotation marks omitted), *cert. denied*, 2019 WL 358389 (U.S. March 18, 2019) (No. 18-986). Second, the plaintiff must show "that the right was clearly established at the time of the alleged unlawful activity." *Riggins*, 572 F.3d at 1107. "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (internal quotation marks omitted).

As explained below, Torres's claims fail under the first prong of the qualified-immunity analysis.

## II.  Excessive Force

"We treat claims of excessive force as seizures subject to the Fourth Amendment's objective requirement for reasonableness." *Lindsey v. Hyler*, 918 F.3d 1109, 1113 (10th Cir. 2019) (internal quotation marks omitted). Thus, "[t]o establish [her] claim, [Torres] . . . must show both that a seizure occurred and that the seizure was

5

unreasonable." *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (internal quotation marks omitted). Consequently, "[w]ithout a seizure, there can be no claim for excessive use of force" under the Fourth Amendment. *Id.* (internal quotation marks omitted).

We agree with the district court that Torres failed to show she was seized by the officers' use of force. Specifically, the officers fired their guns in response to Torres's movement of her vehicle. Despite being shot, Torres did not stop or otherwise submit to the officers' authority. Although she exited her vehicle in a parking lot some distance away and attempted to surrender, her intent was to give herself up to "carjackers." Indeed, she testified that she did not want to wait around for police to arrive because she had an outstanding warrant for her arrest. She then stole a car and resumed her flight. She was not taken into custody until after she was airlifted back to a hospital in Albuquerque and identified by police.

These circumstances are governed by *Brooks v. Gaenzle*, 614 F.3d 1213, 1223-24 (10th Cir. 2010), where this court held that a suspect's continued flight after being shot by police negates a Fourth Amendment excessive-force claim. This is so, because "a seizure requires restraint of one's freedom of movement." *Id.* at 1219 (internal quotation marks omitted). Thus, an officer's intentional shooting of a suspect does not effect a seizure unless the "gunshot . . . terminate[s] [the suspect's] movement or otherwise cause[s] the government to have physical control over him." *Id.* at 1224.

Here, the officers' use of deadly force against Torres failed to "control [her] ability to evade capture or control." *Id.* at 1223 (internal quotation marks omitted). Because

6

Torres managed to elude police for at least a full day after being shot, there is no genuine issue of material fact as to whether she was seized when Officers Williamson and Madrid fired their weapons into her vehicle. *See id.* (rejecting plaintiff's contention that "his shooting alone constitute[d] a seizure," given that "he continued to flee without the deputies' acquisition of physical control" and "remained at large for days"); *see also Farrell*, 878 F.3d at 939 (concluding that plaintiffs were not seized when an officer fired his gun at them, because they continued fleeing for several minutes). Without a seizure, Torres's excessive-force claims (and the derivative conspiracy claims) fail as a matter of law.[1]

We, therefore, determine that the district court properly entered summary judgment in favor of Officers Williamson and Madrid on the basis of qualified immunity.

_____

[1] Torres argues that Officers Williamson and Madrid cannot dispute whether she was seized because they did not plead lack of seizure as an affirmative defense. But seizure is not an affirmative defense, it is an element of a Fourth Amendment excessive-force claim. *See Farrell*, 878 F.3d at 937.

Torres also complains that the officers did not argue lack of seizure until their reply brief in support of summary judgment. But in the seven months between the filing of the officers' reply brief and the district court's grant of summary judgment, Torres neither sought to file a supplemental opposition to address the officers' legal argument nor requested leave to marshal "facts essential to justify [her] opposition," Fed. R. Civ. P. 56(d).

Finally, to the extent Torres summarily asserts that a seizure occurred because her "vehicle was shot up and rendered undrivable," Aplt. Opening Br. at 22, we do "not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," *Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283, 1291 (10th Cir. 2018) (ellipsis and internal quotation marks omitted).

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Monroe G. McKay
Circuit Judge